Ivan **JETER**, Administrator of the Estate of Ronald F. **SMITH**, Deceased, Plaintiff,

v.

**BROWN & WILLIAMSON TOBACCO CORPORATION, Defendant.**

No. 02–CV–0789.

United States District Court, W.D. Pennsylvania.

Dec. 1, 2003.

Kenneth W. Behrend, Esquire, Behrend & Ernsberger, Pittsburgh, PA, for Plaintiff.

Peter S. Greenberg, Esquire, Jennifer A. Diamantis, Esquire, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, John K. Gisleson, Esquire, Schnader, Harrison, Segal & Lewis, Pittsburgh, PA, Frederick M. Erny, Esquire, Dinsmore & Shohl, Cincinnati, OH, Thomas E. Riley, Esquire, Karen A. Iafe, Esquire, Chadbourne & Parke LLP, New York City, for Defendant.

## MEMORANDUM OPINION

SCHWAB, District Judge.

### I. Introduction

Plaintiff Ivan Jeter, administrator of the estate of Ronald F. Smith (deceased), has filed suit against Brown & Williamson Tobacco Corporation ("B & W"), alleging that Mr. Smith developed lung cancer as a result of smoking Kool cigarettes manufactured and sold by B & W from 1961 to 1999.[1] Presently before the Court is a motion for summary judgment pursuant to Fed.R.Civ.P. 56, brought by defendant B & W. B & W avers that the Court should dismiss with prejudice all of Plaintiff's claims because none of them can be sustained as a matter of law. For the reasons stated in this Memorandum and Order, the Court will grant B & W's motion for summary judgment.

### II. Background

Mr. Smith commenced this action by filing suit in the Court of Common Pleas of Allegheny County, Pennsylvania on or about November 5, 2001. Defendant removed the case to this Court based upon diversity of citizenship. Plaintiff seeks money damages from B & W, asserting claims of negligence, strict liability (failure to warn and design defect), false misrepresentation, deceit and fraudulent concealment, breach of express warranty, and negligent and false and misleading advertising.

Accepting Plaintiff's allegations as true, Ronald Smith was diagnosed with "poorly differentiated adenocarcinoma" of the lung in September of 2000; Mr. Smith smoked up to four packs per day for years and was unable to quit even after his grim diagnosis; and the brand of cigarettes Plaintiff smoked, Kools, were designed, manufactured, advertised and sold by Defendant.

On September 9, 2002 defense counsel deposed Mr. Smith. This deposition was videotaped. Ronald Smith died in February of 2003.

### III. Summary Judgment Standard

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under

---

1. Plaintiff initially sued B & W and Lorillard Incorporated. Defendant Lorillard was previously dismissed with prejudice from the case. (Doc. No. 27. Filed June, 24, 2003).

the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Facts that could alter the outcome are material facts." *Charlton v. Paramus Bd. of Educ.,* 25 F.3d 194, 197 (3d Cir.), *cert. denied,* 513 U.S. 1022, 115 S.Ct. 590, 130 L.Ed.2d 503 (1994). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

Initially, the moving party must show the absence of a genuine issue concerning any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.,* 862 F.2d 56, 59 (3d Cir.1988); *Continental Ins. Co. v. Bodie,* 682 F.2d 436, 438 (3d Cir.1982). Once the moving party has satisfied its burden, the nonmoving party "must present affirmative evidence to defeat a properly supported motion for summary judgment." *Anderson,* 477 U.S. at 256–57, 106 S.Ct. 2505. Mere conclusory allegations or denials taken from the pleadings are insufficient to withstand a motion for summary judgment once the moving party has presented evidentiary materials. *Schoch v. First Fidelity Bancorporation,* 912 F.2d 654, 657 (3d Cir.1990). Rule 56 requires the entry of summary judgment, after adequate time for discovery, where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

## IV. Discussion

### a. *Plaintiff's Claims of Negligence and Strict Liability are Preempted by the Federal Cigarette Labeling and Advertising Act.*

Defendant contends that the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. §§ 1331 et. seq. ("Labeling Act"), expressly preempts Plaintiff's claims to the extent those claims are based upon failure to warn, concealment, and failure to disclose theories.[2] Plaintiff acknowledges the broad preemptive effect of the Labeling Act but argues that it does not preempt his claim because it does not apply to events occurring prior to 1969 and, therefore, does not preempt his claims to the extent that they stem from Defendant's actions prior to that year.

The Labeling Act contains broad provisions that preempt any requirement or prohibition under state law with respect to warnings or information about the dangers of smoking. The Labeling Act also requires that all cigarettes sold or distributed in the United States contain certain health warnings designed to inform the public that smoking may be dangerous to your health. *Stitt v. Philip Morris, Inc.,* 245 F.Supp.2d 686 (W.D.Pa.2002). The Act provides in relevant part that "No statement relating to smoking and health shall be required in the advertising of any cigarettes the packages of which are labeled in conformity with the provisions of the Act." 15 U.S.C. § 1334(b). The Public Health Cigarette Smoking Act of 1969, which became effective on July 1, 1969, amended the preemption provision of the

---

**2.** The Federal Cigarette Labeling and Advertising Act was enacted in 1965 and amended in 1969.

Labeling Act to read as follows: "no requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter." 15 U.S.C. § 1334(b).

The United States Supreme Court considered the preemptive effect of the 1969 Act in *Cipollone v. Liggett Group, Inc.* 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)(plurality opinion).[3] In *Cipollone*, the plaintiff alleged that the defendant cigarette manufacturers were responsible for the death of his mother, a long time cigarette smoker. *See id.* at 508, 112 S.Ct. 2608. Plaintiff asserted claims that included breach of express warranty, failure to warn customers of smoking hazards, fraudulent misrepresentation of smoking hazards to consumers, and conspiracy to deprive the public of medical and scientific information about smoking. *See id.* The *Cipollone* Court held that the preemptive scope of the Labeling Act, as originally enacted and amended, was governed entirely by the express language of section 1334(b), and that the broad language of section 1334(b) preempted some, but not all, common law damages actions. *See id* at 517–18, 112 S.Ct. 2608. In determining which common law claims were preempted, the Court explained: "The central inquiry in each case is straightforward: we ask whether the legal duty that is the predicate of the common law damages action constitutes a 'requirement or prohibition based on smoking and health ... imposed under state law with respect to ... adver-

tising or promotion' giving that clause a fair but narrow meaning." *Id.* at 523–24, 112 S.Ct. 2608.

■ Plaintiff herein seeks compensation based upon state tort claims including, *inter alia*, negligence and strict liability. Under the doctrine of implied preemption, any state tort claim that imposes liability for an act declared legal by federal law and "stands as an obstacle to the ... purposes and objective of Congress" is preempted. *Geier v. American Honda Motor Co.*, 529 U.S. 861, 872, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000). In response to the health risks of cigarette smoking, Congress chose to regulate the sale of cigarettes instead of completely banning them. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 137–39, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000); *see also* 7 U.S.C. § 1311(a) (legislative findings explaining that "the marketing of tobacco constitutes one of the great basic industries of the United States"). Plaintiff avers that cigarettes are "unreasonably dangerous" because they contain carcinogens and nicotine, both of which are inherent characteristics present in all cigarettes. Therefore, Plaintiff's claims are impliedly preempted because, if allowed to stand, it would essentially render selling or manufacturing a cigarette to be a tort, thereby interfering with "Congress's policy in favor of keeping cigarettes on the market." *Insolia v. Philip Morris Inc.*, 128 F.Supp.2d 1220, 1224–25 (W.D.Wis.2000) (explaining that "Plaintiffs would be ill-advised to pursue a claim of negligence for otherwise faultless sale or manufacture [because a]

---

3. Although *Cipollone* was only a plurality opinion, the United States Court of Appeals for the Third Circuit recognized it as binding. *Michael v. Shiley, Inc.*, 46 F.3d 1316, 1322 (3d Cir.1995) (explaining that it was "satisfied that the preemption discussion and holding [in *Cipollone*] represents [this] Court's current preemption analysis"); *see also Griesen-*

*beck v. American Tobacco Co.*, 897 F.Supp. 815, 822 (D.N.J.1995). Moreover, two of the dissenters in *Cipollone* agreed with the plurality's conclusion that the 1969 Act preempted common law failure-to-warn and certain other claims. *Cipollone*, 505 U.S. at 548, 112 S.Ct. 2608 (Scalia, J., concurring in part and dissenting in part).

holding to that effect would run afoul of the congressional policy that the sale of cigarettes is legal").

■ Under Pennsylvania law, a manufacturer cannot be held liable for a design defect that is an inherent risk of using the product. *See e.g., Dauphin Deposit Bank and Trust v. Toyota,* 408 Pa.Super. 256, 596 A.2d 845, 849 (1991) (alcohol). Despite Plaintiff's allegations, the cigarettes Mr. Smith smoked were not defective, but rather, are a product that carries inherent risks. Indeed, Mr. Smith admitted there was no "safe cigarette" when he was deposed. (Plaintiff's Reply to Defendant's Request For Admissions, Exhibit E, at Response No. 71). Mr. Smith acknowledged that neither the Surgeon General nor any health organization has endorsed any cigarette as "reasonably safe or not 'unreasonably dangerous.'" *Id.* at Response Nos. 9–12. Finally, Mr. Smith conceded that all tobacco produces smoke capable of causing lung cancer and is inherently dangerous. *Id.* at Response Nos. 57–60.

■ The design defect claims in Counts I and II of Plaintiff's complaint fail because Mr. Smith admitted that there is no "commercially or technically feasible cigarette [which] would be reasonably safe." *Id.* at Response No. 25; *see also Id.* at Response No. 70 (admitting that "there is no published method for removing all carcinogens from cigarette smoke"). Under Pennsylvania law, Plaintiff must present a feasible alternative design because it is an "indispensable factor when determining whether the product is unreasonably dangerous." *LaBelle v. Philip Morris, Inc.,* 243 F.Supp.2d 508, 517 (D.S.C.2001) (applying Pennsylvania law); *see Miller,* 679 F.Supp. at 488. Plaintiff has offered no proof of a feasible alternative design for a cigarette that would "remove the risks inherent in their intended use," *Hite,* 578 A.2d at 421, therefore, this Court grants

Defendant's motion for summary judgment as to Counts I and II of Plaintiff's complaint.

b. *Plaintiff's Claims Based on Alleged Misrepresentations or Warranties Fail Because Plaintiff Failed to Establish that Mr. Smith Relied on any Representations Made by B & W.*

■ This Court will also grant Defendant's motion for summary judgment as to Counts III, IV, VI, VII, and VIII, because there is no evidence that B & W made any factual misrepresentation or warranty that Mr. Smith saw or read and relied upon in his decision to begin smoking or to continue smoking Kools. In order to sustain a claim for intentional misrepresentation, Pennsylvania requires Plaintiff to prove that B & W made (1) a representation; (2) which is material to the transaction at hand; (3) falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading Mr. Smith into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *Gibbs v. Ernst,* 538 Pa. 193, 207, 647 A.2d 882 (1994) (citing Restatement (Second) of Torts § 525 (1977)).

■ Negligent misrepresentation requires proof of: (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation. *See Id.* at 210, 647 A.2d 882, (citing Restatement (Second) Torts § 552). The elements of negligent misrepresentation differ from intentional misrepresentation in that the misrepresentation must concern a material fact and the speaker need not

know his or her words are untrue, but must have failed to make a reasonable investigation of the truth of these words. *Id.* Moreover, like any action in negligence, there must be an existence of a duty owed by one party to another. *Bortz v. Noon,* 556 Pa. 489, 729 A.2d 555, 561 (1999).

In order to establish a breach of an express warranty under Pennsylvania law, Plaintiff must demonstrate that B & W made an actual affirmation of fact or promise that constitutes a warranty, other than mere "puffery," that formed the "basis of the bargain" of Mr. Smith's purchase of Kool cigarettes. 13 Pa.C.S.A. § 2313.

■ Plaintiff has offered no evidence that B & W made any representations to Mr. Smith that induced him to smoke Kool cigarettes. In fact, Mr. Smith's admissions and deposition testimony establish that he did not rely on any representations made by B & W about its cigarettes. Plaintiff admits that no evidence indicates that Mr. Smith relied upon any advertising, publication, press release, article, Congressional testimony or other source. In addition, Mr. Smith testified that he began smoking Kools because "everybody did it . . . everybody, all the people around me smoked Kools. That was the brand everybody smoked." (R. Smith Dep. at 39–40). Plaintiff concedes that the only written representation concerning smoking and health that he ever received from B & W was the warning that appeared on cigarette packs and advertising. RFA Response No. 132 (Ex. E).

■ Plaintiff suggests that in lieu of supplying evidence that Mr. Smith relied on alleged misrepresentations made by B & W, this Court should take judicial notice of this fact because misrepresentations by tobacco companies were so "prevalent through various media forms." Supp. RFA Response Nos. 104, 106–08, 121–123, 131. Judicial notice is limited to "acts which are beyond reasonable controversy and which are either matters of common knowledge or capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy may be considered without first being proved." Fed.R.Evid. 201(a, b).[4] Therefore, this Court cannot take judicial notice of any misrepresentations the tobacco industry may have made decades ago. Instead, it requires the Plaintiff meet his burden of showing specific evidence of B & W's misrepresentations and reliance by Mr. Smith on those representations. Plaintiff has not made such a showing; and therefore, his claims of false representation, breach of express warranty, negligent false misleading advertising, and intentional false misleading advertising fail as a matter of law.

 c. *Plaintiff's Claim for Fraudulent Concealment Fails Because Plaintiff Failed to Establish that B & W Had a Duty to Speak.*

This Court will also grant Defendant's motion for summary judgment as to Count IV of Plaintiff's complaint because Plaintiff cannot make the required threshold show-

4. With respect to judicial notice of adjudicative facts, "the tradition has been one of caution in requiring that the matter be beyond reasonable controversy." *Government of Virgin Islands v. Gereau,* 523 F.2d 140, 147 (3d Cir.1975) (citing Advisory Committee's Notes to Fed.R.Evid.201(b)). "A second hallmark of facts properly the subject of judicial notice is that they be either matters of common knowledge or 'capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy . . . .' " *Id.* (quoting *Weaver v. United States,* 298 F.2d 496, 498 (5th Cir.1962)). "Facts possessing these characteristics are entitled to be considered by a judge without first being proved through the routine processes of introducing evidence. The necessary cachet is not, however, bestowed merely by a judge's knowledge of a particular fact." *Gereau,* 523 F.2d at 147.

ing that B & W had any duty to disclose the allegedly concealed information about smoking, and Plaintiff has presented no evidence that any alleged concealment caused Mr. Smith's injury.

 Pennsylvania's fraudulent concealment law is based upon Section 551 of the Restatement of Torts, which provides that liability may be imposed on a party to a business transaction only when Defendant had a duty to speak and failed to do so. *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 611–12 (3d Cir. 1995). "While a concealment may constitute fraud, mere silence is not sufficient in the absence of a duty to speak." *Id. (quoting Smith v. Renaut*, 387 Pa.Super. 299, 564 A.2d 188, (1989)). Under Pennsylvania law, a duty to speak or disclose information normally only arises when there is a fiduciary or confidential relationship between the parties. *Sunquest Information Sys. v. Dean Witter Reynolds, Inc.*, 40 F.Supp.2d 644, 656–57 (W.D.Pa.1999). However, as Plaintiff points out, Pennsylvania courts have recognized that liability may be imposed for failure to speak when a supplier of chattel fails to use reasonable care to inform likely users of the chattel's dangerous conditions. *Binder v. Jones & Laughlin Steel Corp.*, 360 Pa.Super. 390, 520 A.2d 863, 864 (1987) (*quoting* Restatement (Second) of Torts, § 388 (1965)).

 Plaintiff does not allege that a fiduciary relationship existed between Mr. Smith and B & W, but rather, asserts that B & W failed to use reasonable care to inform him of the dangers associated with cigarette smoke. Plaintiff fails to exhibit evidence that B & W concealed specific information about the dangers of smoking beyond what was already widely available and known to the public. Nor does Plaintiff assert any evidence that B & W did not label its cigarette packs in accordance with the industry standard. Therefore, because Mr. Smith had no fiduciary relationship

with B & W, and Plaintiff proffered no specific evidence suggesting that B & W intentionally concealed information from Mr. Smith, Plaintiff's claim for fraudulent concealment fails.

d. *Plaintiff's Claim of Civil Conspiracy Fails Because Plaintiff has not Made a Case Proving an Underlying Criminal Act or Intentional Tort.*

 To make a case for civil conspiracy, at Count V, Pennsylvania law requires Plaintiff to first prove, by "full, clear, and satisfactory evidence," *Fife v. Great Atlantic & Pacific Tea Co.*, 356 Pa. 265, 52 A.2d 24, 39 (1947), an underlying criminal act or intentional tort. *Burnside v. Abbott Laboratories*, 505 A.2d 973, 981 (Pa.Super.1985); *City of Philadelphia v. Lead Industries Association, Inc.*, 1992 WL 98482 at *12 (E.D.Pa.1992); *Advanced Power Sys. v. Hi–Tech Sys.*, 801 F.Supp. 1450 (E.D.Pa.1992).

To maintain a conspiracy claim, Plaintiff also must make a showing that B & W exhibited malice. Malice exists only "where the sole purpose of the conspiracy is to cause harm to the party who claims to be injured." *Spitzer v. Abdelhak*, 1999 WL 1204352 at *9 (E.D.Pa.1999). "Proof of malice, i.e., an intent to injure, is essential in proof of conspiracy." *Id. (quoting Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 211, 412 A.2d 466 (1979)). Because Plaintiff failed to establish a prima facie case supporting the intentional torts he alleged B & W committed, his claim for civil conspiracy must fail. Furthermore, there are no facts of record which indicate that B & W acted solely to injure Mr. Smith. There is simply no specific evidence of record to support Plaintiff's civil conspiracy claim, therefore the Court will grant Defendant's motion for summary judgment on this claim.

## V. Conclusion

For these reasons, Defendant's motion for summary judgment is granted as to all of Plaintiff's claims. The appropriate order follows.

### ORDER OF COURT

AND NOW, this 1st day of December, 2003, IT IS HEREBY ORDERED that Defendants' motion for summary judgment [Document # 45] is GRANTED. It is FURTHER ORDERED that Judgment is entered in FAVOR of DEFENDANT and AGAINST PLAINTIFF.